**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George W. Schaffer, | No. CV17-08150-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Larry Hooten and Daniel Morales, | |
| Defendants. | |

Pro se Plaintiff George Schaffer filed a complaint against Defendants Larry Hooten and Daniel Morales, alleging federal and state law violations arising from their encounter with and detention of Plaintiff on July 29, 2016. Doc. 17. The Court granted judgment on the pleadings for the majority of Plaintiff's claims. Doc. 27. Defendants now move for summary judgment on Plaintiff's remaining 42 U.S.C. § 1983 Fourth Amendment false arrest claim. Doc. 51. The motion is fully briefed, and no party requests oral argument. *See* Docs. 51;53;55. For the reasons that follow, the Court will deny Defendants' motion.

## I.    Background.

The following facts are undisputed unless otherwise noted. Plaintiff is a resident of Yavapai County, Arizona, and a volunteer for the Skull Valley Fire Department ("SVFD"). Doc. 52 ¶ 16. Defendants are Yavapai County deputy sheriffs. *Id.* ¶ 5. On July 29, 2016, Defendants were dispatched for a search-and-rescue call on the backside of Copper Basin Road towards Skull Valley. *Id.* ¶ 3. Plaintiff also joined the search-and-rescue team,

responding to a call for help from SVFD volunteers. *Id.* ¶ 15. Hooten oversaw the mission as the search-and-rescue coordinator. *Id.* ¶ 6.

At the scene, Plaintiff was not wearing a shirt, uniform, or insignia identifying him as a volunteer with SVFD. *Id.* ¶ 20. He drove up in his personal vehicle, and he testified that he switched to the SVFD rescue vehicle before he met Defendants. Docs. 52 ¶ 20; 54 ¶ 20. Plaintiff first met with Morales at the search-and-rescue staging area. Docs. 52 ¶ 21; 52-1 at 171:17- 173:4. Plaintiff and Morales discussed the location of the injured party and traveled down the road so Plaintiff could show Morales where he thought the victim was located. Docs. 52 ¶ 21; 52-1 at 171:17- 173:4. They then returned to the staging area. Docs. 52 ¶¶ 21-23; 54 ¶¶ 21-23.

The parties dispute what transpired next. According to Plaintiff, he encountered Hooten when he returned to the staging area, introduced himself as "George with Skull Valley Fire," and then left because Hooten did not respond. Doc. 52-1 at 179:2-13. Defendant Hooten does not recall this conversation and only testified to an unidentified individual yelling something about being on the wrong road. Docs. 52 ¶ 23-25; 52-1 at 78:21-79:11. Plaintiff also testified that after the first conversation he yelled to Hooten that the Yavapai County Sheriff deputies were going in on the wrong road. Doc. 52-1 at 185:9-24. Plaintiff testified that he could see Hooten and expected to have a conversation with him, but Hooten did not follow-up. *Id.* at 187:8-13. Whether Hooten could identify Plaintiff as the individual who yelled at him is disputed. *Compare* Doc. 52 ¶ 25-26 (stating an unidentified individual)*, with* Doc. 54 ¶¶ 25-26 (stating Hooten identified Plaintiff in his incident report). Hooten asked the chief of the SVFD who yelled at him, and the chief answered that he did not know. Doc. 52 ¶ 29.

After the search-and-rescue team recovered the injured party, Plaintiff attended a debriefing by Hooten. *Id.* ¶ 33. During the debriefing, Defendants claim that Plaintiff was visibly rude, disrespectful, and disruptive, causing Hooten concern over whether Plaintiff belonged to the SVFD. *Id.* ¶ 34-35. According to Defendants, Hooten asked Plaintiff to identify himself, and Plaintiff failed to respond and glared at Hooten. Doc. 52 ¶¶ 37-39.

Eventually, after Hooten requested Plaintiff's name five to ten more times, Plaintiff stated: "You don't need that." Doc. 52 ¶ 43. Defendants claim no one identified Plaintiff as a member of the SVFD. Doc. 52 ¶ 45.

Plaintiff disputes Defendants version of the debriefing encounter, stating that he did not make any verbal comments at the debriefing and that Defendant Hooten never articulated a concern about Plaintiff's membership in the SVFD. Doc. 54 ¶ 34. Plaintiff testified that he made a "tschh" noise during the debriefing because he felt Hooten was being disrespectful to members of the SVFD. *See* Docs. 52-1 at 201-03; 52 ¶ 36. And Plaintiff asserts that he verbally answered each time Hooten asked for identification by saying: "You don't need that." Docs. 52 ¶ 44; 54 ¶ 39; 52-1 at 208. Plaintiff additionally argues that Hooten specifically asked the SVFD fire chief: "Chief are you going to help your man out here?" Doc. 54 ¶ 45. The fire chief was not given the opportunity to respond. Doc. 52-1 at 215:21-22.

The parties agree that after about fifteen minutes of back and forth, Plaintiff said that he was a member of SVFD, did not provide his name, and stated: "I'm out of here. He then turned and walked away from the debriefing. Docs. 52 ¶ 46; 54 ¶ 46. Defendants followed, requested Plaintiff's full name and date of birth, and warned that if he refused he would be handcuffed or arrested. Doc. 52 ¶ 47 (handcuffed); Doc. 54 ¶ 47 (arrested). Hooten gave Plaintiff a final warning and then instructed Morales to handcuff Plaintiff. Doc. 52 ¶¶ 56. After he was handcuffed, Plaintiff gave Defendants his full name and the handcuffs were removed. *Id*. ¶¶57-59. Defendants assert that the handcuffs were removed immediately, but Plaintiff states that he remained handcuffed for approximately five to ten minutes. *Id*. ¶ 61; Doc. 54 ¶ 59. Plaintiff also testified that Morales had a night stick, but Defendants dispute this testimony, stating that they were not issued night sticks. Docs. 52 ¶ 74; 54 ¶ 74.

## II.  Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Defendants' Summary Judgment Motion

Defendants move for summary judgment on the § 1983 false arrest claim because (1) Defendants had reasonable suspicion to stop and detain Plaintiff under *Terry v. Ohio*, 392 U.S. 1 (1968); (2) Defendants' investigatory stop was not an arrest; (3) Defendants had probable cause to arrest Plaintiff; (4) Defendants are protected by qualified immunity; and (5) Plaintiff is not entitled to punitive damages.

### A. Reasonable Suspicion for a *Terry* Stop.

Defendants argue that they had reasonable suspicion that Plaintiff was impersonating a public servant in violation of A.R.S. § 13-2406. Defendants also argue that it was unlawful for Plaintiff to refuse to provide his identity after an officer's request under A.R.S. § 13-2412. Doc. 51 at 9.

The Fourth Amendment protects against "unreasonable searches and seizures" by the government, and "'its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry*, 392 U.S. at 9); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). An investigatory stop does not violate the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot."

*Arvizu*, 534 U.S. at 273 (internal quotation marks omitted). The Court must look at the "totality of the circumstances" to determine whether the officer had an objective basis to suspect wrongdoing. *Id.* The Court may consider how the facts are interpreted by a trained officer. *Cortez*, 449 U.S. at 418. But the articulated facts supporting reasonable suspicion must be more than mere subjective impressions of a particular officer. *Nicacio v. U.S. INS*, 797 F.2d 700, 705 (9th Cir. 1985). Permissible deductions or rational inferences must be grounded in objective facts and be capable of rational explanation. "[W]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion in making a stop." *Id.*

Defendants argue that they had reasonable suspicion that Plaintiff was impersonating a law enforcement officer in violation of A.R.S. § 13-2406 and was violating the law by refusing to identify himself under A.R.S. § 13-2412. Defendants provide the following facts to support their reasonable suspicion: (1) the search was conducted at night in the middle of nowhere; (2) the search team included individuals who were not members of the Yavapai County Sheriff's Office ("YCSO") and whose affiliations were not discernible on sight; (3) Plaintiff was rude and disruptive during Hooten's debriefing and refused to identify himself despite repeated questioning; (4) no one at the debriefing, including the fire chief of SVFD, Plaintiff's son, and other members of SVFD, identified Plaintiff as a member of SVFD; (5) Plaintiff attempted to flee after being confronted by Hooten; and (6) Plaintiff claimed to be a member of SVFD but refused to give his full name until after he was handcuffed. Doc. 51 at 10-11.

As discussed above, Plaintiff disputes most of these facts. He alleges that he was identified as a member of SVFD and introduced himself to Hooten prior to the debriefing encounter. He made a disrespectful noise during the debriefing and declined to answer Hooten's questions, instead exercising his right to walk away. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (law enforcement may approach an individual and ask questions, but the individual does not have to answer them). He was then seized by Hooten, who demanded his name and birth date and indicated that he knew Plaintiff was a member of

the SVFD by referring to him as "your man" when directing a question to the SVFD chief. Considering the facts in the light most favorable to Plaintiff, the Court finds genuine issues of fact as to whether Defendants had reasonable suspicion to stop and detain him for impersonating a public servant or refusing to answer.

Further, the impersonation statute applies when a person "engages in any conduct with the intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." A.R.S. § 13-2406. Defendants present no evidence that Plaintiff attempted to induce another to submit to or rely on his authority.

And Plaintiff's refusal to identify himself does not alone give rise to reasonable suspicion to detain him. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (Fourth Amendment prohibits officers from "stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity").

The Court will not grant summary judgment on this ground.

**B.      Plaintiff's Arrest.**

Defendants argue that the *Terry* stop did not become an arrest. Doc. 51 at 12. "There is no bright-line rule to determine when an investigatory stop becomes an arrest." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quotation makes and citation omitted). The Ninth Circuit has instructed district courts to consider whether (1) the suspect was handcuffed, (2) the police drew their weapons, (3) the police physically restricted the suspect's liberty, (4) special circumstances existed, such as a risk of violence, and (5) the officers were outnumbered. *Id.*

Here, there is a genuine dispute of fact as to whether the detention of Plaintiff constituted an arrest. Defendants argue that only one of the *Sialoi* factors is satisfied – Plaintiff was handcuffed. *See* Doc. 51 at 13. Defendants argue that they did not draw any weapons, Plaintiff was intentionally evasive about answering their questions, Plaintiff was not placed in a patrol vehicle, he attempted to flee the scene, Defendants were outnumbered by members of the SVFD, and Plaintiff was released immediately after identifying himself. *Id.*

Plaintiff disputes most of these facts. He argues that he never attempted to flee and complied with Defendants' request to stop walking. Doc. 53 at 12. He asserts that Morales brandished a baton during the incident and that his release from the handcuffs was not immediate. Doc. 52-1 at 216:22 to 217:7. Viewing the facts in favor of the nonmoving party, the Court finds that a reasonable jury could find Plaintiff's detention amounted to an arrest. The Court will not grant summary judgment on this ground.

## C. Probable Cause for Arrest.

Even if Plaintiff was arrested, Defendants argue, they had probable cause for the arrest. Doc. 51 at 14. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007); *see also Hansen v. Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1996).

Defendants assert two bases for probable cause: (1) Plaintiff violated A.R.S. § 13-2412 by not providing his identification information at the request of police officers during a lawful detention, and (2) under the totality of the circumstances, Defendants had probable cause to believe that Plaintiff was not a member of SVPD and was impersonating an officer in violation of A.R.S. § 13-2406. The Court cannot grant summary judgment on either basis.

Section 13-2412 provides:

> It is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer *who has lawfully detained the person* based on reasonable suspicion that the person has committed, is committing or is about to commit a crime. A person detained under this section shall state the person's true full name, but shall not be compelled to answer any other inquiry of a peace officer.

A.R.S. § 13-2412(A) (emphasis added).

By its plain terms, this statute makes it a crime to refuse to provide identification only *after* a person has been "lawfully detained." *Id.* As a result, Plaintiff's pre-detention

refusal to identify himself could not have violated the statute and, it follows, could not have provided the officers with probable cause to believe he had violated the statute. To the extent Defendants claim that Plaintiff violated the statute by refusing to provide his name after he was detained and before he was handcuffed, their argument still runs afoul of the "lawfully detained" requirement in the statute. Plaintiff's pre-detention refusal to answer could not have made his detention lawful because, as noted above, Terry stops cannot be based on a mere refusal to provide identification. *Brown*, 443 U.S. at 52.[1]

Nor can the Court grant summary judgment because the officers had reasonable suspicion to stop Plaintiff, or probable cause to arrest him, due to a perceived violation of the impersonation statute. There is a dispute of fact about whether Defendants had reason to believe Plaintiff was impersonating an officer. Plaintiff alleges that he introduced himself to Hooten as a member of SVFD before the debriefing encounter. He also alleges that Hooten knew he was a member of the SVFD because Hooten referred to Plaintiff as "your man" when directing a question to the SVFD chief. Further, as noted above, the impersonation statute applies only when a person "engages in any conduct with the intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." A.R.S. § 13-2406. Defendants do not allege that Plaintiff attempted to induce another to submit to or rely on his authority.

The Court will not grant summary judgment on this basis.

### D. Qualified Immunity.

A defendant in a § 1983 action is entitled to qualified immunity from civil liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

---

[1] This argument also fails on summary judgment because the actual point at which Plaintiff's detention began is not clear from the disputed facts. If the detention occurred at the point when Plaintiff was handcuffed, then there was no post-detention refusal to answer that would have violated the statute. Defendants state that "[a]s soon as Plaintiff was handcuffed, he gave his full name." Doc. 51 at 8.

sequence for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." The first step asks whether, when taken in the light most favorable to the non-moving party, the facts show that the official's conduct violated a constitutional right. *Id*. If so, a court turns to the second step and asks if the right was clearly established at the time. *Id*. at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201.

A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation presented. *Saucier*, 533 U.S. at 202. The right's contours must be "sufficiently clear that a reasonable official would understand [his conduct] violates that right." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). As the Ninth Circuit has explained:

> Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies in *this* case that *their particular conduct* was unlawful. To achieve that kind of notice, the prior precedent must be "controlling" – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction.

*Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original).[2]

The Court has already found that the first step of the qualified immunity inquiry is satisfied. Taken in the light most favorable to Plaintiff, the facts in this case show a violation of the Fourth Amendment – viewed in Plaintiff's favor, there simply was no reasonable suspicion or probable cause for his detention and arrest.

The second step – whether Plaintiff's rights were clearly established at the time – is not difficult. Detentions without reasonable suspicion and arrests without probable cause

---

[2] The Court must note that nearly simultaneous precedent from the Ninth Circuit seems to set forth a different requirement: "we do not 'require a case directly on point[.]'" *Longoria v. Pinal Cty.*, 873 F.3d 699, 709 (9th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

are well established violations of the Fourth Amendment. *See Terry*, 392 U.S. at 28-31 (investigatory stop requires reasonable suspicion); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (warrantless arrest requires probable cause). This legal principle has been established by controlling precedent of the Supreme Court. *Sharp*, 871 F.3d at 911. Officers are not allowed to detain an individual for looking suspicious or for not providing identification. *Brown*, 443 U.S. at 52.

The Court will not grant summary judgment on this ground.

### E.    Punitive Damages.

Defendants argue that Plaintiff cannot recover punitive damages because their conduct was not malicious, oppressive, or in reckless disregard of Plaintiff's rights. *See* Doc. 51 at 17. Punitive damages are available under § 1983 when a defendant's conduct "involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 30 (1983).

Viewing the facts in the light most favorable to Plaintiff, Morales brandished a baton, Defendants detained Plaintiff without reasonable suspicion or probable cause, and Defendants handcuffed Plaintiff for approximately ten minutes. A reasonable jury could find that Defendants' conduct exhibited a "reckless or callous indifference" to Plaintiff's Fourth Amendment rights. The Court will not grant summary judgment on this ground.

### 6.    Defendants Request to Respond to Plaintiff's Facts.

Defendants request additional briefing to respond to Plaintiff's statement of facts, asserting that the ten-page limit for reply briefs is not sufficient. Doc. 55 at 2. But additional factual assertions by Defendants will not eliminate the factual dispute in this case. The parties have materially different versions of the events in this case, creating a factual disagreement that a jury must resolve. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.[3]

---

[3] Defendants also object to Plaintiff's exhibits 18 to 20 as not admissible or material.

**IV.    Conclusion.**

      Because questions of fact preclude summary judgment, this case must be resolved by a jury.  But the Court's discussion in this order should not be read as indicating that the Court thinks Plaintiff will prevail at trial.  The Court does not know who the jury will believe.  Nor does the Court have reason to think that Plaintiff will recover substantial actual or punitive damages for his five- or ten-minute detention.

      **IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 51) is **denied**.  The Court will hold a telephonic conference to set trial and final pretrial conference dates on **January 25, 2019 at 4:00 p.m.**  Counsel for Defendants shall initiate a conference call to include Plaintiff, counsel for Defendants, and the Court.  If a dial-in number is to be used, counsel for Defendants shall provide an email to Plaintiff, counsel for Defendants, and the Court with the dial-in information no later than January 23, 2019 at noon.

      Dated this 11th day of January, 2019.

David G. Campbell
Senior United States District Judge

---

*See* Doc. 55 at 2.  Defendants do not explain why these exhibits are not admissible. Because the Court has not relied on these exhibits, there is no need to determine their admissibility at this stage of the proceedings.